UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTION TRUST CORPORATION, as Receiver for MERCURY SAVINGS AND LOAN ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY PAUL ROWE, et al.<br><br>Defendants.<br>_____/ | No. C 90-20114 FMS (WDB)<br><br>**ORDER GRANTING ASSIGNEE/JUDGMENT CREDITOR'S MOTION FOR WRIT OF EXECUTION FOR ASSETS OF REVOCABLE TRUST**<br><br>Docket No. 1339 |

    The Cadle Company, as judgment creditor and assignee of Plaintiff Resolution Trust Corp., brings this Motion for an Order for a Writ of Execution on Assets of the judgment debtor, Anthony Rowe, that are held in a revocable trust. On October 17, 2007, the Court held a hearing on the motion, at which appearances by counsel were made on behalf of Movant The Cadle Company, Defendant Anthony Rowe, and third party in interest Nancy Rowe. Mrs. Rowe also appeared at the hearing. Counsel for Movant made clear at the hearing and in its reply papers that the only property subject to the present motion is the Morgan Stanley Active Assets joint account held in the trust. Having considered the papers, the oral testimony and documentary evidence received by the Court, as well as the argument of counsel, the Court GRANTS the motion for the reasons stated below.

## I. FACTUAL BACKGROUND

The judgment at issue was entered "in favor of Assignee of Record, The Cadle Company, in the sum of $16,677,563.39, and against Defendant Anthony Paul Rowe." *See* Docket Entry #1331 (8/17/06 Order for renewal of judgment). Pursuant to Rule 69 of the Federal Rules of Civil Procedure, "[p]rocess to enforce a judgment for the payment of money shall be by a writ of execution, unless the court directs otherwise. The procedure on execution . . . shall be in accordance with the practice and procedure of the state in which the district court is held . . . ."

California Probate Code Sec. 18200 provides that "if the Settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." Anthony Rowe and his wife, Nancy Rowe, are the "Settlors" or "Trustees" of the revocable "Rowe Living Trust," which was established in 2002. Because Nancy Rowe has an interest in the trust assets, The Cadle Company seeks an order to be appended to a writ directing the sheriff to execute upon assets in the trust that are community property.

### A. Testimonial Evidence

In opposition to the motion for writ of execution, Defendant Anthony Rowe filed a declaration to support his claim that the assets in the trust were "funded largely by the separate property of the non-debtor spouse, Nancy Rowe." Docket no. 1344. The Court ordered further briefing and supporting evidence. Docket no. 1347. In support of her supplemental opposition to the motion for writ of execution, Mrs. Rowe submitted declarations by herself and her son, Michael Rowe.

At the hearing on the motion, Mrs. Rowe offered sworn testimony in an effort to support her claim that about 70% of the funds in the joint Morgan Stanley account were her separate property, originating from her inheritances and her separate investment profits. She testified that she and her husband opened a joint account in

the early or mid-1980s with her husband's earnings from a townhouse project. Mrs. Rowe further testified that she invested in a design business from about 1989 to 2000, with about $20,000-$25,000 from the joint account. She got a return of about $50,000 when the business closed, but did not get periodic payouts over time.

Mrs. Rowe also testified about the three inheritances which form the basis for her separate property claim. First, she testified that in about 1990, her mother left her an inheritance of about $122,000, which bypassed Mrs. Rowe and went to her children in 1991, who invested the money for her. Mrs. Rowe testified that a few years later, her children returned the principal plus profit, which she likely would have deposited in the joint account. Second, she testified that in 1991, she inherited $40,000-50,000 from her aunt, which she deposited into some account, possibly the joint account at issue, but she was not sure. Third, she testified that in 2001, she received from her stepfather an inheritance of about $42,000, which she deposited into the joint account.

Mrs. Rowe also testified about major expenditures from the joint account at issue. In October 2002, she bought a 2003 Toyota Avalon, which she considers her separate property, for about $35,000, paid in cash out of the joint account. Then in 2003, she and her husband bought a Highlander with a down payment of about $15,000-$20,000 out of the joint account. Mrs. Rowe recalled buying three other cars between the 1980's and about 2000, probably using funds out the joint account. She also testified that she and her husband had recently paid about $10,000 in attorneys' fees for each of their counsel.

In her papers, Mrs. Rowe indicates that her current townhouse is not held in the trust, and Movant concedes that the townhouse is not at issue in the present motion. Mrs. Rowe testified that she, her husband, and their son acquired the townhouse in 1986 with a down payment from one of the husband and wife's accounts; their son was making payments on the house while living there or renting it. In about 1990, the elder Rowes quitclaimed the deed to their son. In 1994, the Rowes moved into the

townhouse and began to make payments on the house, paid out of their income. Mrs. Rowe testified that in June 1997, their son transferred title to her as a gift.

**B.     Documentary Evidence**

Pursuant to the Court's interim order following the hearing, Mrs. Rowe submitted copies of the Morgan Stanley Active Assets account statements, which generally cover the period from May 1999 to September 2007, except November and December 2004, September 1999, and March 2003. The earliest statement covers January 1998 for account #0756 in Dean Whitter Reynolds; the next available statement, issued by Morgan Stanley Dean Whitter for the same account number, is dated May 1999. The Court notes that in May 2003 the assets were transferred from that Morgan Stanley account (#0756) to the Active Assets account that is in issue here (#8255), an account which is held by Nancy and Anthony Rowe as trustees of the Rowe Living Trust. The Court further notes that the records are not authenticated by a supporting declaration, but Mrs. Rowe's attorney, David Rao, explains in a letter to the Court that Mrs. Rowe's financial advisor provided these records, and that no other records exist regarding the Rowe's Active Asset Account at Morgan Stanley, which merged with Dean Whitter Reynolds in 1996.

To summarize the financial information contained in the documents, the earliest available statement for account #0756, dated January 1998, reflects a total asset value of $4,908.39. The next available statement is dated 16 months later, May 1999, and reflects a $0.00 value following a transfer of $5,217.52 to another account. Subsequent deposits were made into the account after the funds were withdrawn to a balance of zero.

The Court notes two significant omissions from the financial records. Missing from the records is the statement covering September 1999, when the total asset value for the account dropped by about $15,000. The October 1999 statement reflects the closing value for the end of September 1999 ($35,625.04), which is about $15,000

below the closing value in August 1999 ($50,868.92), but there is no statement to track how the funds were withdrawn in September.  Also missing is the statement for March 2003, when the total asset value dropped from $98,611.15 in February to $43,496.35 in April 2003.  Again, there is no record to track how approximately $55,000 was withdrawn in March 2003, although it's clear that there was a reduction in the balances for both cash ($33,941.57 to $7,016.86) and securities ($64,669.58 to $36,479.49) during that month.

Significant withdrawals from the account which are recorded in the financial statements were made in August 2002 ($20,000 check made out to CASH); October 2002 ($34,935.21 check to Toyota of Santa Cruz); February 2003 ($25,000 cash transfer to another account); April 2003 ($14,496 check to Anthony P Rowe); July 2007 ($5,000 check paid to Nancy Rowe); August 2007 (about $10,000 in various checks paid to Citimortgage, AAA, US Treas, CK Driver Design, and another $10,000 paid to attorneys); September 2007 ($4,500 in checks to Chase Cardmember Services and Tax Col Santa Clara Co., and $5,000 paid to attorney).  From November 2002 to August 2007, three checks were written to "CK Driver Design" in the total amount of $18,000.

There were significant deposits to the account in July 1999 ($50,685.74); September 2000 ($45,000); July 2002 ($97,000, plus $1,831 distribution from Husband's retirement account); and April 2003 ($71,331.58, plus $3,500 IRA distribution).

From 1998 to 2007, the Rowes withdrew about $211,000, including approximately $70,000 that is completely unaccounted for by the absence of account statements.  In that same period, they deposited about $294,000 into the account, but the sources of most of those funds are not accounted for by documents or testimony.  Notably, much of that amount, over $173,000, was deposited between July 2002 and April of 2003, well after Mrs. Rowe reportedly received her inheritances.  The

deposits from that ten-month period exceed the most recent available balance of $90,830.97 for September 2007 by about $81,000.

## II. ANALYSIS

Nancy Rowe contends that the joint account holds assets that she received as separate property, and thus are not subject to execution by The Cadle Company. In resolving this dispute about whether the assets are separate or community property, the Court is required to apply California law. Fed. R. Civ. P. 69. There are, however, some issues in the analysis as to which California law is not completely clear: (1) how demanding the burden of proof is, and (2) whether testimonial evidence, standing alone, may be sufficient to "trace" property to separate sources.

As we explain further below, with respect to these two issues, we conclude that California courts probably would adopt (1) the preponderance of the evidence standard to prove that property is separate, and (2) acknowledge that, at least in some circumstances, a party might be able to satisfy that burden on the basis of testimonial evidence alone (i.e., without documentary corroboration or support). Regardless of how California courts would resolve these issues, however, we conclude that The Cadle Company would prevail. In the paragraphs that follow, we apply the standards that are more favorable to Defendant and third party Mrs. Rowe; but even under these more favorable standards, Mrs. Rowe has clearly failed to meet her burden. If state courts were to use more demanding standards, she would fail by an even greater margin.

### A. Burden of Proof

California law presumes that all property acquired during marriage is community property unless it falls within a limited list of specific exceptions, one of which is separate property. Cal. Family Code § 760. *See In re Marriage of Haines*, 33 Cal. App. 4th 277, 289-90 (4th Dist. 1995). Separate property of a married person

includes "[a]ll property acquired by the person after marriage by gift, bequest, devise, or descent." Cal. Family Code § 770(a)(2).

"Generally speaking, there are two methods of carrying the burden of showing property purchased during the marriage to be separate: (1) direct tracing to a separate property source or (2) proof that at the time of purchase all community income was exhausted by family expenses." *Estate of Murphy*, 15 Cal. 3d 907, 918 (1976). *See* Cal. Family Code § 2640(b) ("In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source.") *See also In re Marriage of Braud*, 45 Cal. App. 4th 797, 823 (1st Dist. 1996). Other ways to rebut the presumption of community property are "[s]howing an agreement or clear understanding between the parties regarding ownership status," and "[e]vidence that the item was acquired as a gift." Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2007), ¶¶ 8:365-366.

California appellate courts are divided about which standard to apply to overcome the presumption of community property. Some courts have applied the more demanding clear and convincing standard. *See Weingarten v. Superior Court*, 102 Cal. App. 4th 268, 277 (4th Dist. 2002) (judgment debtor wife must rebut presumption of community property by clear and convincing evidence, and husband must be afforded opportunity to prove up identity of separate property); *Gagan v. Gouyd*, 73 Cal. App. 4th 835 (4th Dist. 1999) (debtor husband's testimony did not meet nondebtor wife's burden to prove by clear and convincing evidence that her limited partnership interest in cable TV company was separate property), disapproved on other grounds by *Meija v. Reed*, 31 Cal. 4th 657, 669 n.2 (2003).

But recently, the First District recognized that civil cases are generally governed by the preponderance of the evidence standard and questioned whether the

higher burden of proof should apply to a dissolution where the interests at stake are strictly economic. *In re Marriage of Ettefagh*, 150 Cal. App. 4th 1578, 1589-91 (1st Dist. 2007), *review denied* Aug. 8, 2007. There, the wife contended that the trial court applied the wrong standard by accepting "any credible evidence" to overcome the presumption of community property, and cited Witkin as support for requiring clear and convincing evidence. *See* 1 Witkin, Cal. Evid. (4th ed. 2000) Burden of Proof and Presumptions at 187-89, §§ 38, 39(14) (listing situations requiring higher degree of proof in civil cases, including "Property acquired after marriage as separate property"). The Court of Appeal declined to follow Witkin, reasoning that the principal case on which he relied, *Estate of Nickson*, 187 Cal. 603, 605 (1921), described a preponderance of evidence and was questionable authority for requiring clear and convincing evidence. 150 Cal. App. 4th at 1588.

In *Ettefagh*, the court also analyzed the interests at risk in the dissolution proceeding, and determined that "[t]he interests of husband and wife in *community* property are 'present, existing and equal,' but neither spouse, ordinarily, has any interest in the *separate* property of the other." 150 Cal. App. 4th at 1590. Assessing the risk of error, the court reasoned that "both spouses share an equal risk that the court may err in classifying the property." Relying on *In re Marriage of Peters,* 52 Cal. App. 4th 1487, 1490-91 (3rd Dist. 1997), the Court of Appeal noted that there were no interests at stake that were "more substantial than mere loss of money" so as to warrant a higher standard of proof. *Ettefagh*, 150 Cal. App. 4th at 1590 (quotation marks omitted).

Commenting on the policy considerations of an evidentiary standard, the *Peters* court stated: "The degree of burden of proof applied in a particular situation is an expression of the degree of confidence society wishes to require of the resolution of a question of fact. The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution. Preponderance of the evidence results in the roughly equal sharing of the

1  risk of error. To impose any higher burden of proof demonstrates a preference for one
2  side's interests. Generally, facts are subject to a higher burden of proof only where
3  particularly important individual interests or rights are at stake; even severe civil
4  sanctions not implicating such interests or rights do not require a higher burden of
5  proof. " 52 Cal. App. 4th at 1490 (citations omitted). The *Peters* court held that the
6  preponderance standard was sufficient to establish the date of separation because the
7  interests at stake were economic and the same for both parties, making it appropriate
8  for the parties to share the risk of error equally. *Id.* at 1492-94 ("the mere fact that
9  property which otherwise might be characterized as community will be considered
10 separate is no reason for a higher standard of proof").

11 Commentators also have questioned the applicability of the clear and
12 convincing standard to overcome the presumption of community property, except
13 where the property is described as "community" in record title pursuant to Evidence
14 Code § 662. *See* Hogoboom & King, Cal. Practice Guide: Family Law ¶ 8:362.1
15 (other than community property stated in record title, "the contesting party should be
16 held to the normal preponderance of the evidence standard (Ev. C. § 115)." *See also*
17 *id.*, ¶ 8:362.2 (disapproving *Gagan*).

18 We think that most California courts would find the reasoning of *Peters* and
19 *Ettefagh* persuasive. As the parties' interests in a case like this are purely economic,
20 there is no compelling interest or policy consideration that warrants a clear and
21 convincing standard -- a standard that would tip the balance in favor of the creditor
22 over the nondebtor spouse. Thus, we conclude that California courts today are most
23 likely to adopt a preponderance standard, so we apply that standard here.

**B.   Satisfying the Burden of Proof That Some Commingled Property is Separate**

"The presumption in favor of community property applies to commingled
property so that the burden of proof rests with the party claiming the property to be

9

separate." *In re Estate of Luke*, 194 Cal. App. 3d 1006, 1018 (2nd Dist. 1987). *See also In re Marriage of Braud*, *supra*, 45 Cal. App. 4th at 824 ("if the separate property and community property interests have been commingled in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property pursuant to the general community property presumption"). "Under California law, all community property is liable for debts of either spouse incurred before or during marriage." *In re Soderling*, 998 F.2d 730, 733 (9th Cir. 1993). *See* Cal. Family Code § 910. California law requires Mrs. Rowe to prove that property that has been commingled with community property is hers separately.

The traditional California rule is that a spouse who bears the burden of proof to establish that some commingled property is hers separately bears a burden to keep adequate records. "[T]he burden of establishing a spouse's separate interest in presumptive community property is not simply that of presenting proof at the time of litigation but also one of keeping adequate records. '[A spouse] may protect his separate property by not commingling community and separate assets and income. **Once he commingles, he assumes the burden of keeping records** adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property.'" *Murphy*, *supra*, 15 Cal. 3d at 919 (quoting *See v. See*, 64 Cal.2d 778, 784 (1966)) (emphasis added). *See also Braud*, 45 Cal. App. 4th at 824-26; *In re Marriage of Higinbotham*, 203 Cal. App. 3d 322, 330 (1st Dist. 1988).

In *Murphy*, the court determined that there was no evidence that the husband's separate income could be traced to any of the assets in dispute. "None of the separate income was directly traced into any particular bank account or other asset. Evidence which merely establishes the availability of separate funds on particular dates without also showing any disposition of the funds is not sufficient proof of tracing to overcome the presumption in favor of community property." 15 Cal.3d at 918. The

California Supreme Court noted that "the trial court found that Murphy's separate income had been commingled with community funds in checking and savings accounts in his own name and in the joint names of himself and his wife and that there were no records adequate to identify any particular portions of such commingled funds as derived from community or separate property sources." *Id.* The Court held that under these circumstances, "the commingled accounts and any assets acquired with funds withdrawn from them were properly treated as community property." *Id.* While these thirty-year old pronouncements by the *Murphy* court are vigorous, we are not confidant that California courts today would rigidly insist that only authenticated records could serve as the basis for overcoming the presumption that all commingled assets constitute community property. Resolving this doubt in Mrs. Rowe's favor, we have decided to consider and weigh her testimonial evidence.

In the case at bar, Mrs. Rowe has offered little evidence to trace her funds to a separate property source. Though she was a credible witness and cannot be faulted for not remembering details, she could not recall relevant historical facts, such as whether her inherited assets were deposited into the joint account at issue. Such spotty testimony is not sufficiently reliable to trace her inherited funds, particularly in the absence of supporting documents. First, Mrs. Rowe testified that the $122,000 inheritance from her mother was bypassed to her children, who subsequently invested that amount and returned the principal and some profit to Mrs. Rowe, but she cannot specify how much she received as profits, and there is no reliable evidence of any monetary gift from her children after they invested her inheritance. To the contrary, her husband, Defendant Rowe, explains that her ownership in their townhouse flows from the proceeds of her inheritance, suggesting that Mrs. Rowe's inheritance was returned in the form of real property, rather than cash that was deposited into the joint account.[1] Anthony Rowe Decl., ¶ 6.

---

[1] Movant concedes that the townhouse is not subject to the present motion, but contends that Defendant has given conflicting testimony about the source of funds for purchasing the townhouse.

Second, the earliest bank record is dated January 1998, with a balance of about $4,900, far less than the approximately $40,000 that she inherited from her aunt in 1991. Furthermore, the account had a zero balance in May 1999, suggesting that even if Mrs. Rowe had deposited any of her inheritance into that account, all the funds were spent by May 1999.

Third, even though her bank records cover the time that she inherited $42,000 from her stepfather in 2001, that amount is not reflected in the account statements for that year. There was no documented large deposit to the account after September 2000 until July 2002, but the amount of that deposit ($97,000) bears no relationship to the amount of her inheritance. Nor has she adduced any evidence to explain where that money came from.

According to Mrs. Rowe's testimony, there were other major sources of funds for the Active Assets account: her husband's earnings and returns on his investments, as well as returns on investments by Mrs. Rowe. Mrs. Rowe did not provide amounts or dates of these earnings, and did not demonstrate any basis to claim these earnings as separate property. The limited records available to us indicate that several sizeable amounts were deposited into the account that are totally unexplained, and there is no basis to infer that these deposits are anything but community property. The magnitude of these deposits overwhelms in value even the deposits that Mrs. Rowe thinks she made from her inheritances.

---

Movant suggests that Defendant has a community property interest in the townhouse, pointing out that during the judgment debtor exam, Defendant testified that the source of the down payment for the townhouse "was partly from my wife's [sic] and partly from my savings." Knowles Decl., Ex. A. Their son took title to the townhouse, then conveyed title to Mrs. Rowe, intended as a gift, on June 2, 1997. Michael Rowe Decl., ¶ 2 and Ex. A. The Court makes no determination at this time about the character of the Rowes' property interest in the townhouse.

### C. Sufficiency of Testimonial Evidence

Under California law, "direct tracing to a separate source [] has traditionally been subject to a requirement that it be done by specific records." *In re Marriage of Stoll,* 63 Cal.App.4th 837, 841 (4th Dist. 1998). Some state courts, however, have accepted testimony about marital property after considering its reliability. In *Luke*, the husband's heirs introduced an affidavit by the husband in his deceased wife's probate proceeding, in which the husband claimed that certain savings bonds and time certificates were his separate property traceable to funds he received from the sale of a business he owned prior to marrying his wife. 194 Cal. App. 3d at 1017. The appellate court held that "[t]he fact the affidavit was self-serving did not make it inadmissible. However, the affidavit should not have been admitted because it did not meet the criteria for an exception to the hearsay rule." *Id.* The court thus suggested that it would have been willing to admit the substance of the husband's self-serving testimony if it were reliable and fell within an exception to the hearsay rule.

In *Ettefagh*, the Court of Appeal concluded (in the unpublished portion of its opinion) that the testimony of the husband and his father was sufficient to sustain the trial court's finding that the properties at issue were acquired by gift, and therefore separate property of the husband. 150 Cal. App. 4th at 1591. The Court of Appeal cited other (published) opinions upholding the court's determination of the character of marital property based on oral testimony: *In re Marriage of Camire*, 105 Cal. App. 3d 859, 865 (2nd Dist. 1980) (testimony of wife's brother that house was intended as gift to wife was sufficient to rebut presumption); *DeBoer v. DeBoer*, 111 Cal. App. 2d 500, 506 (2nd Dist. 1952) (husband's testimony sufficient to overcome presumption of separate property where title is taken in wife's name); *Walker v. Walker*, 108 Cal. App. 2d 605, 608 (2nd Dist. 1952) (wife testified that husband gave her a ring as separate property).

Thus, it appears that under some circumstances California courts may permit a party to use testimony to "trace" separate property. When dealing with funds in a

bank account, however, state courts would likely require specific records. *See Stoll*, 63 Cal.App.4th at 841-42 (permitting spouse's testimony about value of separate property share in real property, but distinguishing need for exact records for commingled bank account, citing *See*, 64 Cal. 2d 778). Furthermore, courts may require more than the spouses' declarations where the interests of third party creditors are at stake and the property has been commingled. *See In re Freitas*, 16 F.Supp. 557, 560 (S.D. Cal. 1936) (after husband's bankruptcy, "even the most emphatic declarations of the spouses themselves will not be sufficient [to establish wife's separate property], if circumstances show no assertion of such right prior to the bankruptcy or go counter to it"). *See also Weingarten*, 102 Cal. App. 4th at 277-78 (wife who owed judgment in action for fraud and malice did not rebut presumption of community property on basis of her deposition testimony alone).

Here, the Court has been presented apparently honest but uncertain and very incomplete testimony by Mrs. Rowe about how the assets in the couple's joint account were allocated between separate and community property. Even accepting her testimony without corroborating documentation, her testimony is insufficient to trace her separate property, as she could not even confirm where she deposited her inheritances. Such shortcomings in memory can be expected and demonstrate why the law places substantially more confidence in written records.

Moreover, other facts and circumstances substantially undermine her claim of separate property. The fact that the account at issue had a balance of $0.00 in May 1999, eight years after she claims to have received the inheritance from her aunt, appears to preclude any possibility that any of that property remains in the account today. Her claim that she intended to keep her inheritance as separate property also is inconsistent with the couple's spending practices, which reflect no attempt to segregate or preserve Mrs. Rowe's inheritance. The account records indicate that the funds were commingled with community property income and used for the benefit of both husband and wife, particularly in the last year (e.g., both spouses' attorneys' fees,

14

mortgage payment, taxes, credit card).  Thus, Mrs. Rowe's testimony is not sufficiently reliable to overcome the presumption of community property.

If held to a strict recordkeeping requirement, Mrs. Rowe's failure to meet her burden would be even greater, as she has not produced sufficient documentation. Where, as here, the funds have been commingled in a brokerage account, California courts would likely require accurate records.  Such a requirement is more likely when a third party interest is involved.  Mr. Rowe's creditors are not in a position to rebut Mrs. Rowe's separate property claims, unlike a marital dissolution where each party is presumed to have roughly equal access to relevant information.  Without adequate records, there is no way for creditors to show the extent of the community's liability.

Because Mrs. Rowe offers no reliable evidence to trace the source of the assets that are currently in the joint account, she has not demonstrated that any of the funds in the Active Assets brokerage account are her separate property.  We therefore hold that all those funds are community property against which The Cadle Company may execute its judgment.

## III.   CONCLUSION

The Court GRANTS The Cadle Company's motion for an order for writ of execution as to the Active Assets brokerage account (#8255) held in the name of the Rowe Living Trust.  The Trustees of the Rowe Living Trust shall promptly satisfy the judgment held by The Cadle Company in the above-entitled action out of the funds in the  account held in said Trust.

In addition, the Trustees of the Rowe Living Trust are hereby RESTRAINED AND ENJOINED from conveying, transferring, or otherwise removing any funds

//

from the account held in said Trust, until further order of this Court upon noticed motion by the Trustees.

This order disposes of docket number 1339.

IT IS SO ORDERED.

Dated:   November 20,  2007

                                   WAYNE D. BRAZIL
                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RTC,

         Plaintiff,

  v.

ANTHONY P. ROWE, et al.,

         Defendants.
_____/

Case Number: CV90-20114 FMS

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 20, 2007, I SERVED true and correct copies of the attached Order Granting Assignee/Judgment Creditor's Motion for Writ of Execution for Assets of Revocable Trust, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David Blaise Rao
Binder & Malter
2775 Park Avenue
Santa Clara, CA 95050

James R. Knoles
Brewer & Brewer
4533 MacArthur Blvd
Ste 707
Newport Beach, CA 92660

Laura Anne Palazzolo
Berliner Cohen
Ten Almaden Blvd
Suite 1100
San Jose, CA 95113

Dated: November 20, 2007

Richard W. Wieking, Clerk
By: Hera Kim, Deputy Clerk

17